IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LINDA LEE                                                          PLAINTIFF

v.                                               CAUSE NO. 1:23cv63-LG-RPM

CITY OF PASCAGOULA,
JACKSON COUNTY, MISSISSIPPI                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING CASE TO STATE COURT**

**BEFORE THE COURT** is the second [58] Motion for Summary Judgment

filed by Defendant City of Pascagoula, Jackson County, Mississippi ("the City"), in

this lawsuit arising out of the condemnation of real property previously owned by

Plaintiff Linda Lee.  After reviewing the submissions of the parties, the record in

this matter, and the applicable law, the Court finds that the City's Motion for

Summary Judgment should be granted as to Lee's 42 U.S.C. § 1983 claims.  The

Court declines to exercise supplemental jurisdiction over Lee's state law claims

pursuant to 28 U.S.C. § 1367(c)(3).  Therefore, state law claims will be remanded to

state court.

**BACKGROUND**

On October 26, 2021, the City's Code Enforcement Department provided Lee

with a notice of condemnation that her property, the Crown Inn, which is "located at

3500 14th Street (Property ID # 41703207.000), Pascagoula, Mississippi," was

condemned as unfit for human habitation and that the property is a nuisance.

(Compl. at 2, ECF No. 1-1; Def's Mot., Ex. D, ECF No. 58-4).  On November 5, 2021,

the City's Building Department issued a notice of hearing concerning the condition of the property.  (Def.'s Mot., Ex. F, ECF No. 58-6).  Lee has admitted that she received the notice of hearing in the mail.  (Def.'s Mot., Ex. A at 49, 59, , ECF No. 58-1).  She asked her son to attend the hearing on her behalf.  (*Id.*)  A few hours before the hearing, on December 7, 2021, Lee gave her son James a quitclaim deed to the property because he advised that he could represent her better at the hearing if his name was on the deed.  (*Id.* at 60).

At the hearing, the City Council issued a resolution declaring the property a menace to public health, safety, and welfare.  (Def.'s Mot., Ex. H, ECF No. 58-8).  Lee appealed the City Council's resolution to the Circuit Court of Jackson County, Mississippi, pursuant to Miss. Code Ann. § 11-51-75.  She claimed that the City failed to provide due process by failing to comply with the notice requirements of Miss. Code Ann. § 21-19-11(1).  She further argued that "the City's decision was not supported by substantial evidence and she was never given an opportunity to cure and/or repair the code violations."  (Def.'s Mot., Ex. I at 1, ECF No. 58-9).  The Mississippi Circuit Court found that: (1) the City complied with the notice requirements of Miss. Code Ann. § 29-19-11; (2) the city's decision was based on substantial evidence; and (3) Lee did not cite any authority requiring a municipality to give a property owner an opportunity to repair the property prior to declaring the property a menace.  (*Id.* at 4).

Lee appealed the Circuit Court's decision.  In the appellee's brief, the City raises three issues in addition to those raised by Lee: (1) whether Lee has standing

to appeal since she no longer owns the property; (2) whether the appeal is moot given that Lee no longer owns the property and the current owner has cleaned the property; and (3) whether the scope of the appeal is limited to the City's adoption of a resolution to clean Lee's property pursuant to Miss. Code Ann. § 21-19-11. (Appellee's Brief at iv, *Lee v. City of Pascagoula*, Cause No. 2022-CA-01190). On November 7, 2023, Lee's appeal was submitted to the Mississippi Court of Appeals without oral argument.

A few months after appealing the Circuit Court's decision, Lee filed the present lawsuit in the Circuit Court of Jackson County, Mississippi. The City removed the case to this Court based on federal question jurisdiction. In this lawsuit, Lee alleges that "there is a complete failure of evidence that this property constituted a public menace, within the meaning of that term, and there is a violation of the due process rights guaranteed by the 14th Amendment of the United States Constitution to the owners of the property [and] the right to be protected from an unlawful taking of property without due process of law without paying just compensation." (*Id.* at 3). She also claims that the City violated her constitutional right to equal protection. Finally, she asserted violations of the Constitution of the State of Mississippi and Miss. Code Ann. § 21-19-11(1)(a).

Previously, the City sought summary judgment on the basis that Plaintiff was no longer the owner of the property when this lawsuit was filed and was therefore not the real party in interest. The Court denied that Motion on June 7, 2023. The City has now filed a second Motion for Summary Judgment. It asks the

Court to reconsider its denial of the City's first Motion because discovery has revealed that Lee does not have standing to pursue her claims against the City. The City further asserts there is no genuine issue of material fact that (1) the cancellation of Lee's contract to sell the property to William "Buddy" Hall was caused by the City's condemnation of the property; (2) Lee had not explained how she was treated differently from those similarly situated; (3) the City provided constitutionally adequate notice of the condemnation hearing to Lee; (4) summary administrative action was justified in this emergency situation, which concerned the health and safety of the property's tenants; (5) the City's actions were rationally related to protecting the health and safety of citizens; and (6) there was no taking of the property by the City because she willingly gave the property to her son prior to the City's resolution declaring the property a menace.

Lee argues that there are two genuine issues of material fact preventing summary judgment— (1) whether the City was aware of her contract to sell the property to Hall, and (2) whether the City's actions in condemning the property caused the cancellation of Hall's contract to purchase the property.  Lee also maintains that the City deprived her of her rights to procedural due process and substantive due process.  Lee agrees that her takings claim should be dismissed. She has also apparently abandoned her equal protection claim because she has not addressed that claim in response to the City's Motion.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).  Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## I.  THE ROOKER-FELDMAN DOCTRINE

The City seeks to invoke the *Rooker-Feldman* doctrine.  In a footnote, the City states:

> To the extent Lee asks the Court to somehow reverse or un-do the City Council's adjudication of the property as a menace under Section 21-19-11, the Court should find that the *Rooker-Feldman* doctrine precludes such relief.  *Bell v. Tallahatchie County*, 440 F. Supp. 3d 569 (N.D. Miss. Feb. 18, 2020) (citations omitted).  The circuit court affirmed the City Council's decision on November 18, 2022.  See Order [Doc. 23], *Lee v. City of Pascagoula*, Cause No. 1:21-cv-225, Jackson Cnty. Cir. Ct.  Lee did not file her Complaint in this action until

February 10, 2023, satisfying the timeliness requirement of the
*Rooker-Feldman* doctrine.

(Def.'s Mem. at 11 n.1, ECF No. 59).

The *Rooker-Feldman* doctrine is a narrow jurisdictional bar that applies
"where a party in effect seeks to take an appeal of an unfavorable state-court
decision to a lower federal court." *Klick v. Cenikor Found.*, 79 F.4th 433, 443 (5th
Cir. 2023). The doctrine is inapplicable where, as here, a state appeal is pending
when the federal lawsuit is filed. *See Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir.
2022).

## II. ARTICLE III STANDING

"To have Article III standing, a plaintiff must show an injury in fact that is
fairly traceable to the challenged action of the defendant and likely to be redressed
by the plaintiff's requested relief." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir.
2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The City first
argues that the causation element of Article III standing is lacking because the
potential buyer of the property, William "Buddy" Hall, has testified by deposition
that the loss of the contract for sale of the property was not caused by the City, but
the failure of Lee and the closing attorney to appear at the closing. (Def.'s Mot. Ex.
J at 10, ECF No. 58-10). Lee testified at her deposition that she did not attend the
closing because Hall had told her he no longer wanted to purchase the property due
to the condemnation. (Pl's Resp., Ex. A at 81-82, ECF No. 62-1). Therefore, a
genuine issue of material facts exists regarding whether the City's condemnation
caused the property sale to fall through.

-6-

As for its second argument related to standing, the City seems to misunderstand the Court's reasoning in its prior [21] Memorandum Opinion because it argues in its latest Motion and supporting Memorandum:

> While there may have been an initial question on the timing of the quit claim deed from Linda Lee to James Lee at the time of the City's initial Motion, it was established during discovery and admitted by Linda Lee herself that she gave the deed to her son prior to the December 7, 2021, hearing before the City Council.  Accordingly, Linda Lee was not the legal owner of the property at that time, and any subsequent action by the City declaring the property a menace did not harm her.  To the extent Linda Lee asserts wrongdoing by the City at any time following the conveyance of the property to James Lee, the Court should grant summary judgment to the City on those claims due to Linda Lee's lack of standing.

The Court's prior opinion denying summary judgment did not hinge on lack of clarity concerning the date of the quit claim deed.  (*See* Mem. Op. & Order at 4, ECF No. 21) ("The parties agree that Plaintiff conveyed the property to James W. Lee, Jr., Inc., a Mississippi corporation, via Quit Claim Deed on December 7, 2021.")  This Court provided the following explanation for its denial of summary judgment and finding of standing:

> While the City correctly notes that its Resolution was dated December 7, 2021, Plaintiff alleges in her Complaint that the City first acted earlier, on October 26, 2021, when Josh Church, the City's Building Official, condemned the property by an October 26, 2021, Notice, and told the occupants of the property to vacate the property.  (Compl. at 3, ECF No. 1-1).  Plaintiff attached a copy of the October 26, 2021, Notice condemning the property as unfit for habitation to her Complaint. (Compl., Ex. A, ECF No. 1-1).  As a result, there is evidence before the Court that a City Official condemned the property before Plaintiff's alleged contract to sell the property expired.

(Mem. Op. & Order at 6, ECF No. 21).  A copy of the October 26, 2021, Notice of Condemnation has been produced by the City in support of its second Motion for

Summary Judgment.  (Def.'s Mot., Ex. D, ECF No. 58-4).  Lee also testified during her deposition that the closing date for the sale of the property was scheduled for November 1, 2021.  (Def.'s Mot., Ex. A at 80, ECF No. 58-1).  Therefore, the discovery conducted since the Court's prior Memorandum Opinion and Order does not alter the facts cited by the Court in its prior opinion.

However, the Court agrees with the City's contention that any occurrences after Lee's December 7, 2021, conveyance of the property to her son could not have caused her any damages.  The only damages that are at issue in this lawsuit are those allegedly caused by the City prior to December 7, 2021.  Since Lee admitted this in her [9] Response to the City's first Motion for Summary Judgment it was not necessary for the Court to make this distinction.  (Pl.'s Resp. at 2, ECF No. 9) ("All of the damages that had occurred to Linda Lee, the property owner, occurred up to and prior to December 7, 2021.").

## III.  LEE'S 42 U.S.C. § 1983 CLAIMS

42 U.S.C. § 1983 provides that a plaintiff may sue a municipality for a violation of constitutional rights that occurs "under color of any statute, ordinance, regulation, custom, or usage."  *Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 307 (5th Cir. 2023).  In her Complaint, Lee claimed that the City violated her Fourteenth Amendment rights to due process and equal protection as well as the takings clause of the Fifth Amendment.  She now confesses that she does not have a claim for an unconstitutional taking of her property, "apart from the 'Substantive

Due Process Claim.'" (Pl.'s Resp. at 3, ECF No. 62). She has abandoned her equal protection claim by failing to address it in opposition to the City's Motion.

## A. PROCEDURAL DUE PROCESS

The Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

> Once it is determined that due process applies, the question remains what process is due. Though the required procedures may vary according to the interests at stake in particular contexts, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

*Cuellar v. Tex. Emp. Comm'n*, 825 F.2d 930, 934 (5th Cir. 1987) (cleaned up) (citing, *inter alia*, *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 542.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Lee argues that the City did not provide her with adequate notice because it failed to "[post] notice for at least two (2) weeks before the date of a hearing on the property or parcel of land alleged to be in need of cleaning and at city hall or

another place in the municipality where such notices are posted."  Miss. Code Ann. § 21-19-11.

However, "[f]ederal law . . . determines what procedural protections the Fourteenth Amendment requires.  This is true even where state law is the source of the protected property right at issue."  *Smith as Tr. of Smith Fam. Living Tr. v. City of Bastrop*, No. 21-51039, 2023 WL 2890162, at *6 (5th Cir. Apr. 11, 2023) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[T]he answer to the question of what process is due 'is not to be found in a [state] statute. . ..'")).  Although a state or local entity may have failed to comply with statutory notice requirements, "this state law violation does not also amount to a violation of federal due process."  *Dearman v. Stone Cty. Sch. Dist.*, 832 F.3d 577, 584 (5th Cir. 2016).  "[U]nless the conduct trespasses on federal constitutional safeguards, there is no [federal] constitutional deprivation."  *Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985).  To prove that state-mandated procedures add to the federal constitutional minimum, a plaintiff must show that "the procedures promised [were] denied in such a manner that the constitutional minimum is itself denied or an independent constitutional deprivation is effected."  *Id.* at 1230.

The City provided Lee with notice and an opportunity to appear at a hearing prior to its adoption of a resolution declaring that the property was a menace.  She chose to transfer ownership of the property to her son so that he could appear at the hearing.  The City satisfied the federal constitutionally requirements of due process

and is therefore entitled to summary judgment as to Lee's procedural due process claim.

### B.  SUBSTANTIVE DUE PROCESS

"[T]he due process clause does not require a state to implement its own law correctly, and accordingly a violation of state law is alone insufficient to state a constitutional claim under the Fourteenth Amendment." *G & H Dev., L.L.C. v. Benton-Par. Metro. Plan. Comm'n*, 641 F. App'x 354, 358 (5th Cir. 2016) (quoting *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996)).  "The overarching objective of [the substantive due process] doctrine is to prevent government officials from 'abusing their power, or employing it as an instrument of oppression.'" *Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337, 341 (5th Cir. 2001) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  "To prevail on a substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249-50 (5th Cir. 2000).  The parties in the present case do not dispute that Lee had a constitutional protected property right up to the point when she gave the property to her son on December 7, 2021.

"If a court is persuaded that the government's action implicates a constitutionally protected property right, it must next determine the appropriate standard of review." *Reyes v. N. Texas Tollway Auth.*, 861 F.3d 558, 561 (5th Cir. 2017).  "[G]overnment action that applies broadly gets rational basis [review];

government action that is individualized to one or a few plaintiffs gets shocks the conscience [review]." *Id.* at 562. "Some due process challenges blur along the executive/legislative line, such as when a broadly applicable rule is challenged only as it applies to a particular situation." *Id.* at 563 (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867-69 (5th Cir. 2012) (en banc)). In *Doe*, the Fifth Circuit applied the shocks the conscience standard because a broadly applicable policy was challenged based on how it harmed a particular individual. *Doe*, 675 F.3d at 867-69. Since Lee is contesting the City's application of state law and City ordinances to her property, the "shocks the conscience" standard applies to the City's actions concerning Lee's property.[1]

Egregious, outrageous conduct "intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 846-47 & n.8. "[M]unicipalities do in fact have a substantial, legitimate interest in keeping substandard housing unoccupied, and are entitled to further this interest by ensuring that landlords

---

[1] Both parties have cited this standard in their memoranda, so it appears that application of this standard is undisputed. However, the Court finds that the City's actions would also survive the rational basis standard because its actions were rationally related to the protection of the health and safety of its citizens. *See Simi Inv. Co. v. Harris County*, 236 F.3d 240, 251 (5th Cir. 2000) ("The question is only whether a rational relationship exists between the policy and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation."); *Hidden Oaks v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998).

either repair their property during the current tenancy or face a complete loss of income from the substandard unit." *Hidden Oaks*, 138 F.3d at 1044.

The City correctly explains:

> The City acted lawfully pursuant to its police power "to prevent, remove, and abate nuisances." Miss. Code Ann. § 21-19-1. Mississippi law specifically authorizes the City to adopt and enforce ordinances such as the International Property Maintenance Code, which it did in this case. Miss. Code Ann. §§ 21-19-25, 17-2-1. The City's use of municipal powers to protect the welfare of its citizens cannot be considered an unlawful or unjust purpose.

(Def.'s Mem. at 10-11, ECF No. 59). The City's conduct does not shock the conscience because it was justified by the City's interest in protecting the health and safety of its citizens. The City is entitled to summary judgment as to Lee's substantive due process claim.

## IV. SUPPLEMENTAL JURISDICTION

A district court has discretion to decline supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993) (per curiam).

> [A] federal court should consider and weigh in each case, and at every stage of the litigation, *the values of judicial economy, convenience, fairness, and comity* in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by

-13-

> dismissing the case without prejudice. . .. [T]he doctrine of pendent
> jurisdiction thus is a doctrine of flexibility, designed to allow courts to
> deal with cases involving pendent claims in the manner that most
> sensibly accommodates a range of concerns and values.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (internal citations omitted) (emphasis added).

The comity doctrine generally "reflects a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010) (quotation omitted). "[C]omity demands that the important interests of federalism and comity be respected by federal courts, which are courts of limited jurisdiction and not as well equipped for determinations of state law as are state courts." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 160 (5th Cir. 2011) (quotation omitted). The United States Court has explained:

> [A] district court has discretion to remand to state court a removed
> case involving pendent claims upon a proper determination that
> retaining jurisdiction over the case would be inappropriate. The
> discretion to remand enables district courts to deal with cases
> involving pendent claims in the manner that best serves the principles
> of economy, convenience, fairness, and comity which underlie the
> pendent jurisdiction doctrine.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

All of Lee's federal claims have been adjudicated by this Court. The Court declines to exercise jurisdiction over Lee's remaining state law claims. The values of judicial economy, fairness, and convenience are neutral in this case. Although

discovery is complete and trial is scheduled a few months away, this Court and the
state court are in neighboring counties, and any discovery could be utilized in the
state court proceeding. *See Waste Sys., Inc. v. Clean Land Air Water Corp.*, 683
F.2d 927, 931 (5th Cir. 1982).  Meanwhile, the doctrine of comity weighs heavily in
favor of remand to the state court.  An appeal involving many of the state law issues
presented in this case, and previously address by the Jackson County Circuit Court,
is currently pending resolution by the Mississippi Court of Appeals.  To avoid
interference with the state court action or potential contradictory decisions
regarding the same issues, the Court finds that it is not prudent to retain
jurisdiction over Lee's state law claims.  This conclusion is consistent with the
general rule that a federal court should decline to exercise supplemental jurisdiction
when all federal law claims are eliminated prior to trial.  *See Heggemeier v.
Caldwell Cty.*, 826 F.3d 861, 872 (5th Cir. 2016).  The Court will remand Lee's state
law claims to the Circuit Court of Jackson County, Mississippi.

## CONCLUSION

Lee has abandoned her equal protection and takings claims, and there is no
genuine issue of material fact on any of the remaining federal claims.  Therefore,
the City of Pascagoula is entitled to judgment as a matter of law on Lee's federal
claims.  Lee's quiescent state law claims are remanded to the Circuit Court of
Jackson County, Mississippi, pursuant to 28 U.S.C. § 1367(c)(3).

**IT IS THEREFORE ORDERED AND ADJUDGED** that the second [58]
Motion for Summary Judgment filed by Defendant City of Pascagoula, Jackson

County, Mississippi, is **GRANTED IN PART** as to Linda Lee's 42 U.S.C. § 1983 claims.

      **IT IS FURTHER ORDERED AND ADJUDGED** that the Court having dismissed all claims over which it has original jurisdiction, declines to exercise supplemental jurisdiction over any remaining state law claims. Pursuant to 28 U.S.C. § 1367(c)(3) the above-captioned case is hereby **REMANDED** to the Circuit Court of Jackson County, Mississippi, and that a certified copy of this Order of remand shall be immediately mailed by the Clerk to the clerk of the state court pursuant to 28 U.S.C. § 1447(c).

      **SO ORDERED AND ADJUDGED** this the 14th day of December, 2023.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE